UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Marshall Goughnour, bringing this action on behalf of himself and the United States of America, | Civil No. 06-1601 (PAM/RLE) |
| Relator, | |
| v. | **MEMORANDUM AND ORDER** |
| REM Minnesota, Inc., REM North Star, Inc., National Mentor Holdings, Inc., and Mentor Management, Inc., | |
| Defendants. | |

This matter is before the Court on Defendants' Motions to Dismiss Pursuant to Federal Rules of Civil Procedure Rules 9(b) and 12(b)(6). For the reasons that follow, the Court grants the Rule 9(b) Motion, dismisses the federal False Claims Act counts with prejudice, and declines to exercise supplemental jurisdiction over the remaining state law claim. The Court further denies the Rule 12(b)(6) Motion as moot.

**BACKGROUND**

Defendant REM Minnesota, Inc. ("REM") and its related Defendant corporations contract with human services agencies in Minnesota counties to provide group home health care services. Contracts are awarded based on competitive bidding. Marshall Goughnour ("Goughnour"), the Relator-Plaintiff in this action, worked for REM for 24 years. When Goughnour left on November 18, 2005, he was a Regional Director who oversaw group homes in Beltrami, Cass, and Koochiching Counties.

On April 26, 2006, Goughnour filed a qui tam and wrongful discharge action against "The Mentor Network d/b/a REM Minnesota, Inc."  In Count I, Goughnour alleged that Defendants had engaged in conduct that resulted in the United States Government suffering actual damages in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.  In Count II, he alleged wrongful discharge under the FCA, 31 U.S.C. § 3730(h).  In Count III, he alleged wrongful termination under Minnesota's whistleblower statute, Minn. Stat. § 181.932.

Goughnour alleged that as early as July 2003 he became concerned about REM's internal accounting process as well as the budgets that REM submitted to Minnesota counties, and that he reported the "fraudulent financial reporting to his superiors."  (Am. Compl. ¶¶ 20-21.)  On or about March 23, 2004, he questioned his immediate supervisor about why his region's financial reports showed losses.  According to Goughnour, the response was that his region's expenses previously had been "shifted" to other regions, and that now his region was paying an appropriate share.  (Id. ¶¶ 22-23.)  Goughnour characterized this as a way for REM "hide profits" by "inflating expenses in regions where [REM] had been asked to justify the high costs of its services to local county human services offices."  (Id. ¶ 24.)

Goughnour alleged that on or about March 30, 2004, he reported the practices to REM's Compliance Officer and the next day expressed concern to REM's State Executive Director.  (Id. ¶¶ 25-26.)  Goughnour stated that in August 2004 he told five named

2

individuals at REM that any attempt to "cushion" budgeted wages by overstating how many persons would staff homes and how much they would be paid "was unethical and possibly fraudulent." (Id. ¶¶ 32-34.) Goughnour further alleged that REM forbade him from providing Beltrami County with actual expense reports that the county had requested, and that for one specific home he was directed to provide reports that did not include actual expenses. (Id. ¶ 37.)

Goughnour stated that in or around October 2004 his immediate supervisor and REM's State Director were terminated, and that he reported the practices to their replacements on or about March 17, 2005. (Id. ¶¶ 40-41.) Soon thereafter, REM management removed Regional Director responsibilities from Goughnour. (Id. ¶¶ 44-48.) He left the company on November 18, 2005. REM characterized the departure as a "restructuring," while Goughnour stated that his position had not been eliminated and that he had been replaced. (Id. ¶¶ 49-50.)

On December 12, 2006, the United States of America filed a Notice pursuant to 31 § 3730(b)(4)(B) stating that it would not intervene in the action.

On August 1, 2007, Mentor Management filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and in its Memorandum stated that The Mentor Network was not a legal entity subject to suit. Goughnour then filed an Amended Complaint adding the above-captioned entities as Defendants, and REM conceded that the Rule 12(b) deficiencies had been cured.

Also on August 1, 2007, REM filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(b), which requires that "all averments of fraud or mistake," including FCA allegations, be "stated with particularity." In its Memorandum, REM contended that the FCA claims must be dismissed because Goughnour had failed to sufficiently specify who committed the alleged wrongdoing and what, where, when, and how the wrongdoing occurred. In the Motion papers REM did not seek dismissal of the state-law claim in Count III, but at oral argument urged the Court not to exercise supplemental jurisdiction over it while generally arguing that it also should be dismissed because Goughnour failed to specify that he had reported alleged violations to his employer.

**DISCUSSION**

**A.   False Claims Act**

The FCA imposes liability on persons responsible for the United States Government paying false or fraudulent claims. Private persons such as Goughnour may bring an FCA action and maintain it even where, as here, the Government elects not to proceed with the action. 31 U.S.C. §§ 3730(b)(1) and (c)(3). Goughnour premises his FCA allegations solely on 31 U.S.C. § 3729(a)(2), which imposes liability when a person "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."

**1.   Particularly Requirement**

The parties agree that Goughnour's FCA claims must satisfy Federal Rules of Civil

Procedure 9(b), which requires that "all averments of fraud or mistake . . . shall be stated with particularity." See United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006). In resolving a Rule 9(b) motion in an FCA matter, allegations should be taken as true and all reasonable inferences drawn in the relator's favor. Id. However, dismissal is required when a complaint lacks particularity as to the "who, what, where, when, and how" of the alleged fraud. Id. Where allegations are "based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997).

REM contends that Goughnour's Complaint lacks requisite particularity in many ways, most notably as to how the budgets at issue caused the United States Government to actually pay or approve any fraudulent claims within the meaning of the FCA. Goughnour responds that his allegations regarding REM misrepresentations as to group home staffing levels and salaries provide sufficient particulars about how false claims were made.

A threshold issue is whether there has been a "claim" under the FCA. A claim is a "request or demand . . . for money or property which is made to a contractor, grantee, or other recipient . . ." 31 U.S.C. § 3729(c). A typical FCA allegation involves improvident billing, not budgeting. See, e.g., Joshi, 441 F.3d at 554 (complaint alleged hospital "would bill Medicaid and Medicare . . .") (emphasis added). Internal accounting reports and budgets prepared as part of competitive bidding do not to fit within the statutory definition of "claim." Because Goughnour has failed to adequately allege that there was a "claim,"

5

REM's Motion to Dismiss Pursuant to Rule 9(b) should be granted.

Even if there were a "claim," Goughnour's Complaint fails to satisfy Rule 9(b) in numerous ways. His suggestion that the United States Government paid false Medicaid claims is made "[u]pon information and belief" with no details about the source of the information and the reasons for belief. (Am. Compl. ¶ 6.) This is insufficient for purposes of Rule 9(b). Parnes, 122 F.3d at 550 (where allegations are made on information and belief, "complaint must set forth the source of the information and the reasons for the belief"). Goughnour fails to even remotely suggest how much money is at issue, and this also renders his Complaint deficient. Id. at 550 (granting Rule 9(b) motion to dismiss where "Plaintiffs fail to allege the amount of fraudulent profit"); P.B. Kranz v. Koenig, 240 F.R.D. 453, 456 (D. Minn. 2007) (Magnuson, J.) (dismissing fraudulent conveyance claim under Rule 9(b) where complaint lacked information on sale price and market value of properties).

Although Goughnour names who at REM is involved with accounting and budgeting and when he confronted those persons about the allegedly fraudulent corporate practices, he fails to specify who was responsible for any fraudulent or false submissions actually being paid and when the claims were paid. Again, these deficiencies compel dismissal. See Joshi, 441 F.3d at 556 (affirming Rule 9(b) dismissal where complaint failed to specify "who was involved in the fraudulent billing aspect of the conspiracy" and "what dates the defendants allegedly submitted the false claims to the government").

Finally, even if REM's alleged representations about group home staffing and salaries

6

could be construed as "false record[s] or statement[s]," see 31 U.S.C. § 3729(a)(2), Goughnour fails to allege how the misrepresentations caused someone to knowingly "get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). To the degree that these and the other allegations complain of wide-ranging fraud, they are insufficient. See Joshi, 441 F.3d at 557 (dismissal required when FCA relator fails to "allege any details concerning false claims actually submitted for payment" but instead "vaguely allege[s] the fraudulent schemes were pervasive and wide-ranging in scope") (quoting Corsello v. Lincare, Inc., 428 F.3d 1008, 1013 (11th Cir. 2005) (per curiam)).

The Court realizes that Goughnour cannot be expected to allege every last specific detail of fraud. However, an FCA relator must provide at least "some representative examples." Joshi, 441 F.3d at 557. Goughnour has failed to do so. Accordingly, REM's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(b) must be granted, and Count I of the Amended Complaint is dismissed.[1]

### 2. FCA Wrongful Discharge Claim

In Count II, Goughnour alleged violation of 31 U.S.C. § 3730(h), which states that an

---

[1] The Government requested that the Court not dismiss the FCA claims before soliciting its consent pursuant to 31 U.S.C. § 3730(b)(1), which states that the "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." (See Notice of Election to Decline Intervention (Docket No. 6).) However, no consent from the Government is required here. See U.S. ex rel. Shaver v. Lucas Western Corp., 237 F.3d 932, 934 (8th Cir. 2001) (interpreting § 3730(b)(1) to apply only where relator seeks voluntary dismissal, not where court grants motion to dismiss for failure to state a claim).

employee discharged "because of lawful acts done by the employee . . . in furtherance of an action under [the FCA] . . . shall be entitled to all relief necessary to make the employee whole." Ultimately an FCA retaliation plaintiff must prove that (1) he was engaged in conduct protected by the FCA, (2) the employer knew that the plaintiff was engaged in the protected activity, (3) the employer retaliated against the plaintiff, and (4) the retaliation was motivated solely by the protected activity. Schuhardt v. Washington Univ., 390 F.3d 563, 566 (8th Cir. 2004). Even construed liberally in Goughnour's favor, the Complaint fails to offer pleading consistent with these requirements. Accordingly, to the degree that the FCA wrongful discharge allegations in Count II exist independently from the allegations in Count I, they also must be dismissed.

### 3. Leave to Amend

Goughnour requested that if the Court granted REM's Rule 9(b) Motion on the FCA counts, then he be granted leave to file a Second Amended Complaint. While leave to file an amended complaint "shall be freely given when justice so requires," see Fed. R. Civ. P. 15(a), "denial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Joshi, 441 F.3d at 557-58 (internal citation omitted).

In Joshi, a qui tam relator opposing a Rule 9(b) motion to dismiss submitted a proposed amended complaint and asked for leave to file it. The Eighth Circuit Court of Appeals affirmed the district court's conclusion that granting leave to amend would be futile

because the qui tam relator's proposed amendments failed to eliminate Rule 9(b) deficiencies. Id. at 558. Here, Goughnour has provided no proposed amendments in accordance with the Local Rules. See D. Minn. L.R. 15.1 ("party who moves to amend a pleading shall . . . attach a copy of the amended pleading to the motion"). Instead, he asserts that courts "recognize that the burden that Rule 9(b) places on plaintiffs is very difficult to satisfy, especially in light of the fact that the detail required is often in the Defendant's possession." (Opp'n Mem. at 9 (citing Abels v. Farmers Commodities Corp., 259 F.3d 910, 921 (8th Cir. 2001)).

However, it appears that discovery has continued in this matter during the pendency of REM's Motions. Further, in Joshi, the Eighth Circuit held that permitting additional discovery to allow the relator to correct pleading deficiencies would contradict with the FCA's purpose and procedure. In that case, as here, the United States Government based its intervention decision on allegations in a complaint already filed. The Eighth Circuit concluded that permitting a qui tam relator to file another complaint after conducting additional discovery "would mean that the government will have been compelled to decide whether or not to intervene absent complete information about the relator's cause of action." Joshi, 441 F.3d at 560 (citation omitted). "Such an approach is inconsistent with the relator's procedural obligations under the FCA and with the FCA's protections for the government, the real party in interest in a qui tam action." Id.

In this situation, granting Goughnour leave to file a Second Amended Complaint, after

additional discovery or otherwise, would be futile and run counter to the FCA statutory scheme. Accordingly, his request is denied, and Counts I and II of the Amended Complaint are dismissed with prejudice. See <u>United States ex rel. Roop v. Hypoguard USA, Inc.</u>, No. 07-1600, 2007 WL 2791115, at *3 (D. Minn. Sept. 24, 2007) (Montgomery, J.) (denying FCA relator's request to conduct additional discovery before filing amended complaint).

**B.    State Claims**

Count III of Goughnour's Amended Complaint asserts a state-law cause of action under Minn. Stat. § 181.932, which forbids an employer from discharging or penalizing an employee because the employee "in good faith, reports a violation or suspected violation of any federal or state law . . . to an employer. . . ."

REM urged the Court at oral argument to not exercise pendent jurisdiction over Count III, but also asserted that the count should be dismissed because Goughnour had failed to allege that he reported violations to his employer. Under these circumstances, the Court declines to exercise supplemental jurisdiction over Count III, leaves pleading-sufficiency determinations to a state tribunal, and dismisses Count III without prejudice. 28 U.S.C. § 1367 (c)(3); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725-26 (1966) ("if it appears that the state issues substantially predominate, . . . the state claims may be dismissed without prejudice and left for resolution to state tribunals").

**CONCLUSION**

Goughnour has failed to plead his FCA claims with particularity as Federal Rule of

Civil Procedure 9(b) requires, and has not established that he is entitled to file a Second Amended Complaint.  Whether Goughnour may maintain a state whistleblower claim is left for another tribunal to decide.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(b) (Docket No. 22) is **GRANTED**, and Counts I and II of the Amended Complaint are **DISMISSED with prejudice**;

2. Count III of the Amended Complaint is **DISMISSED without prejudice**; and

3. Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 25) is **DENIED** as moot.

Dated: November 20, 2007

                                                s/ Paul A. Magnuson
                                                Paul A. Magnuson
                                                United States District Court Judge